UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SWAMIJI SRI SELVAM SIDDHAR; aka | § | |
| ANNAMALAI; aka SELVAM, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-1933 |
| | § | |
| RAVIKUMAR VARADHARAJAN, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court are several motions to dismiss filed by Defendants Ravi Mehrota, Uma Sundaram, Subramanian Annaswamy, Kalavathi Bhaskaran, Subramanian Parthasarathy, and Bhavini Subramani's, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6) (Def's. Mots. to Dismiss, Docs. 9, 20, 30, 36, 38). Also before the court are pro se Plaintiff Swamiji Sri Selvam Siddhar's, a/k/a Annamalai Annamalai ("Annamalai"), motions for voluntary dismissal of Defendants Vijay Mehta, Sridharan Srinivasan, Ravikumar Varadharajan, and Ramchander Gopalswamy (Pl's. Mots. for Voluntary Dismissal, Docs. 5, 128), and Plaintiff Shiva Vishnu Temple of Texas's ("the Temple") motion for voluntary dismissal of all Defendants (Pl's. Mot. for Voluntary Dismissal, Doc. 6).

After reviewing the pleadings, the motions and responses, and the applicable law, the Court finds Plaintiffs' motions for voluntary dismissal should be granted and Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) should be granted. All other motions filed by Plaintiffs and Defendants are dismissed as moot.

## I.    Background

According to his complaint, Annamalai is the Hindu high-priest of a number of Hindu temples in Ohio, Texas, and formerly in Georgia. (Pl's. Am. Compl., Doc. 2). Annamalai offers spiritual healing, including prayers and rituals, to Hindu followers in exchange for a fee. (*Id.* ¶ 35). He advertises his services through television and print media. (*Id.*). Annamalai alleges that most of the Defendants sought out and received such spiritual services from him. (*Id.* ¶ 37). He claims that after receiving his services, Defendants made "defamatory statements to various agencies and…credit card providers in an attempt to have charges for Plaintiff's services reversed." (*Id.* ¶ 37). Defendants then launched a "campaign of cyber-defamation," anonymously posting disparaging comments about him on various online blogs, websites, and in emails to individuals. (*Id.* ¶¶ 28, 37–43). Most of the internet postings are styled as warnings, discouraging people from doing business with Annamalai. They describe him as a fraudulent Hindu high-priest and accuse him of committing credit card fraud. (*Id.* ¶ 51). In his complaint, Annamalai provides numerous quotations of the allegedly defamatory statements and web addresses to the blogs where the statements were posted. (*Id.* ¶¶ 28, 37–43). He, however, offers no evidence linking any of the Defendants to any particular statement. Instead, he asserts all of his claims against all Defendants generally by alleging that they acted anonymously or through the use of pseudonyms. (*Id.* ¶ 28).

On July 2, 2013, Plaintiffs initiated this suit against thirty-six defendants, plus John and Jane Doe 1–10, asserting claims for 1) defamation; 2) intentional infliction of emotional distress; 3) tortious interference with business relations; 4) civil conspiracy; 5) commercial disparagement; 6) interference with an existing business contact; and 7) slander. (Pl's. Original Compl., Doc. 1). On August 7, 2013, the Temple filed a motion to voluntarily dismiss all of its

claims against all Defendants. (Pl's. Mot. for Voluntary Dismissal, Doc. 6). Annamalai also filed

motions to voluntarily dismiss four of the Defendants. (Pl's. Mots. for Voluntary Dismissal, Doc.

5, Doc. 128). Annamalai seeks compensatory damages of $11 million and punitive damages of

$16 million. (Doc. 1 at p. 27).

In addition to this lawsuit, Annamalai has filed several other lawsuits across the country,

bringing similar claims against many of the same defendants named in this case or their relatives.

(Def's. Mem. in Supp. of Mot. to Dismiss, Doc. 39-6). While the Court lacks the time and

resources to research each case, a cursory review indicates that in the past three years Annamalai

has filed over forty-three lawsuits in state courts in Georgia, Ohio, and Texas, and has filed

eleven suits in federal courts, including two additional suits in this very district. The majority of

these cases were dismissed upon initial screening or on defendants' motions. Annamalai has

been declared a vexatious litigant by the 151st Civil Court, Harris County, Texas, and by the

United States District Court for the Northern District of Georgia. The Georgia court enjoined

Annamalai from filing a lawsuit in any court against anyone named in or in some way related to

the case before it without first obtaining leave of the court. [1] (Def's. Mem. in Supp. of Mot. to

Dismiss, Doc. 39-5). The court also imposed monetary sanctions and required Annamalai to pay

the defendants' reasonable attorney fees. (*Id.*).

Defendants move to dismiss Annamalai's claims against them for lack of personal

jurisdiction. (Docs. 9, 20, 30, 36, 38). Defendants state Annamalai has not shown that they have

purposely availed themselves of the forum, but rather he has only made conclusory allegations of

minimum contacts with Texas. (*Id.*). Defendants assert they have never resided in Texas, they

---

[1] Defendants Kandasamy, Shastri, Vasudevan, and Venugopalan are also named defendants in the
Georgia case. Defendants Palamuthu, Ragunathan, and V. Sundaram are spouses of defendants in the
Georgia case, and Defendant R. Sundaram is the son of a defendant in the Georgia case. (Def's. Mem. in
Supp. Of Mot. to Dismiss, Doc. 39-6). The Court finds that these Defendants fall within the scope of the
injunction issued by the Georgia court and they are dismissed.

have never been to Texas or made only infrequent visits to the state, do not hold Texas bank accounts, and that they do not do business in or with Texas. (*Id.*). Defendants also state the claims against them do not arise from any of their actions in Texas, and that it would be a burden for them to have to travel to Texas to defend themselves against Annamalai's claims. (*Id.*).

## II.    Legal Standard

A court must find that it has personal jurisdiction over a defendant before it makes any decision on the merits. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623, n.2 (5th Cir. 1999) ("Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication."). Under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant. When the defendant disputes the factual bases for jurisdiction, "the court may receive interrogatories, depositions, or 'any combination of the recognized methods of discovery' to help it resolve the jurisdictional issue." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod.*, 517 F.3d 235, 241 (5th Cir. 2008) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). At this stage, the plaintiff need only make a *prima facie* case. *Johnston*, 523 F.3d at 602. Proof by a preponderance of the evidence is not required. *Id.* (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). "'[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists.'" *Id.* (quoting *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985)).

Nevertheless, a court is not required to credit conclusory allegations even if they are uncontroverted. *See Panda Brandywine Corp. v. Potomoc Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

"A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.* (quoting *Johnston*, 523 F.3d at 609). To satisfy the requirements of due process, the plaintiff must demonstrate: "(1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Johnston*, 523 F.3d at 609).

A defendant establishes minimum contacts with a state if "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). "[T]here must be some act whereby the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Id.* at 475. Two types of minimum contacts exist: those that support general personal jurisdiction and those that support specific personal jurisdiction. *Johnston*, 523 F.3d at 609. Annamalai does not dispute Defendants' assertions that the Court does not have general jurisdiction over Defendants. As such, the Court's analysis will focus exclusively on specific jurisdiction.

"Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. __ , __ , 131 S. Ct. 2846, 2851 (2011). The Supreme Court recently rearticulated the criteria for establishing specific jurisdiction. *See Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115 (2014). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Id.* at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The defendant's suit-related conduct must create a substantial connection with the forum state, and "the relationship must arise out of contacts that the defendant himself creates with the forum State"…with the "minimum contacts analysis look[ing] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1121–22 (citing *Burger King*, 471 U.S. at 475; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). The plaintiff cannot be the only link between the defendant and the forum. It is the defendant's conduct that must form the necessary connections with the forum state to support the basis for specific jurisdiction. *Id.* at 1122–23 (citing *Burger King*, 471 U.S. at 478)

When analyzing intentional tort claims, such as defamation, for specific jurisdiction, the Fifth Circuit applies the "effects test" first formulated in *Calder v. Jones*. *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Under the "effects test," an act done outside the state that causes injury inside the state may support personal jurisdiction if the defendant "expressly aimed" his conduct towards the forum. *Id.* at 472 (citing *Calder*, 465 U.S. at 789). However, the plaintiff's residence in the forum, and suffering or foreseeability of suffering there, will not alone support jurisdiction. *Id.* at 473. More recently, the Fifth Circuit addressed the issue of defamation and intentional torts alleged to have been committed via the

internet. *See id.* at 473-76. In *Revell*, Revell, a Texas resident, was a former associate director of the FBI who sued a professor and university for defamation arising from an article the professor posted on the university's internet bulletin board that implicated Revell in a conspiracy to cover up the bombing of Pan Am Flight 103. *Id.* at 469. The court concluded there was no personal jurisdiction over the defendants in Texas because the alleged defamatory posts contained no reference to Texas, did not refer to the Texas activities of Revell, and did not target Texas readers specifically. *Id.* at 473. While the court acknowledged the professor likely knew the harm of the article would hurt Revell wherever he resided, but that is the case with any defamation, so a more "direct aim" at the forum is needed. *Id.* at 476. The Fifth Circuit stated a court should "look to the geographic focus of the article, not the bite of the defamation…or who provoked the fight." *Id.*

Additionally, in *Revell*, the Fifth Circuit cited approvingly a Fourth Circuit case where a Virginia prison warden sued two newspapers in Connecticut for posting allegedly defamatory internet articles, and the court held that Virginia could not exercise personal jurisdiction over the Connecticut defendants because they did not aim their articles at a Virginia audience. *Id.* at 474-75 (citing *Young v. New Haven Advocate*, 315 F.3d 256, 258 (4th Cir. 2002)). The *Young* court went on to state that "application of *Calder* in the Internet context requires proof that the out-of-state defendant's Internet activity is expressly directed at or directed to the forum state," and "more than simply making the news article accessible to Virginians…was needed for assertion of jurisdiction." *Id.* at 475 (quoting *Young*, 315 F.3d at 262).

## III.  Discussion

Here, Annamalai did not include any facts in his amended complaint that would justify exercising personal jurisdiction over Defendants in Texas. (Doc. 2). He asserts all of his claims

against all of the Defendants generally and he does not show that the internet postings of any of the Defendants were aimed at Texas. Like the article posting in *Revell*, a majority of the allegedly defamatory postings and emails Annamalai included in his complaint make no mention of Texas, nor his activities in Texas, and do not target Texas readers specifically. And while some of the allegedly defamatory posts mention that Annamalai resides in Texas, Annamalai does not attribute them to any particular defendant.

"Under Fifth Circuit law, a pro se party is not exempt from compliance with the relevant rules of procedure and substantive law." *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir. 1981). While courts are more lenient with pro se litigants, "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law," *Hulsey v. Texas,* 929 F.2d 168, 171 (5th Cir. 1991), and that "[t]hose who venture into federal court without the assistance of counsel cannot…be permitted to enjoy much or protracted advantage by reason of that circumstance." *Brinkmann v. Johnston,* 793 F.2d 111, 113 (5th Cir. 1986). Annamalai provided four separate responses to Defendants' 12(b)(2) motions to dismiss and nowhere in those responses did he show which Defendants made specific comments that were directed at Texas. (Pl's. Resp. to Def's. Mot. to Dismiss, Docs. 42, 67, 72, 74). In his responses, Annamalai argues the alleged comments were directed at him by Defendants who knew he resided in Texas and would be harmed in Texas. This is insufficient to support a finding of personal jurisdiction. As in *Revell*, the mere foreseeability that a plaintiff might suffer harm in the forum of his residence is insufficient to support jurisdiction. A more "direct aim" is needed, and Annamalai has not made a *prima facie* case establishing a Texas court has personal jurisdiction over any of the Defendants.

The Court notes that not every defendant moved to dismiss Annamalai's complaint, pursuant to Rule 12(b)(2); however, it is within the Court's power to dismiss the entire complaint on the Court's own motion, especially given the circumstances of this case. *See Taylor v. Acxiom Corp.*, 612 F.3d 325, 339–40 (5th Cir. 2010) (Holding plaintiffs were not prejudiced by district court's dismissal sua sponte of some defendants who did not join the motion to dismiss "because the plaintiffs make the same allegations against all defendants."). Here, there is no prejudice to Annamalai in granting the motion to dismiss as to all Defendants. Annamalai made the same claims against all Defendants, and he submitted responses to four of the motions to dismiss. (Pl's. Resp. to Def's. Mot. to Dismiss, Docs. 42, 67, 74, 76).

In sum, Annamalai has failed to make a *prima facie* case establishing a Texas court has personal jurisdiction over any of the Defendants and the Court is unable to proceed to adjudication on the merits.

## IV.    Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' motions to dismiss (Docs. 9, 20, 30, 36, and 38) are **GRANTED**. It is further

**ORDERED** that Plaintiffs' motions for voluntary dismissal of Defendants (Docs. 5, 6, and 128) are **GRANTED**.

This case is **DISMISSED**.

SIGNED at Houston, Texas, this 20th day of June, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE